# United States Court of Appeals
### Eleventh Circuit
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

**Thomas K. Kahn**
Clerk

For rules and forms visit
www.ca11.uscourts.gov

August 30, 2005

REC'D by _H.H._ D.C.
APPEALS
SEP 1 4 2005
CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

FILED by ___ D.C.
RECORDS
SEP 1 3 2005
CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

Clarence Maddox
Clerk, U.S. District Court
301 N MIAMI AVE STE 150
MIAMI  FL  33128-7788

**Appeal Number: 04-14046-EE**
Case Style: USA v. Stephen John Jordi
District Court Number:  03-60259 CR-JIC

The enclosed certified copy of the judgment and a copy of this court's opinion are hereby issued
as the mandate of this court.

Also enclosed are the following:
    Original Exhibits, consisting of: one psi
    Original record on appeal or review, consisting of: four volumes

The district court clerk is requested to acknowledge receipt on the copy of this letter enclosed
to the clerk.

A copy of this letter, and the judgment form if noted above, <u>but not a copy of the court's
decision</u>, is also being mailed to counsel and pro se parties. A copy of the court's decision
was previously mailed to counsel and pro se parties on the date it was issued.

Sincerely,

THOMAS K. KAHN, Clerk

Reply To: James O. Delaney (404) 335-6113

Encl.

MDT-1 (03-2004)

# United States Court of Appeals
## For the Eleventh Circuit

No. 04-14046

District Court Docket No.
03-60259-CR-JIC

|  |
| --- |
| FILED |
| U.S. COURT OF APPEALS |
| ELEVENTH CIRCUIT |
| Aug 1, 2005 |
| THOMAS K. KAHN |
| CLERK |

UNITED STATES OF AMERICA,

        Plaintiff-Appellant,

versus

STEPHEN JOHN JORDI,

        Defendant-Appellee,



A True Copy - Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit

By: _____
Deputy Clerk
Atlanta, Georgia

----------------------------------------------------------------

Appeal from the United States District Court
for the Southern District of Florida

----------------------------------------------------------------

## J U D G M E N T

It is hereby ordered, adjudged, and decreed that the attached opinion included herein by reference, is entered as the judgment of this Court.

Entered: August 1, 2005
For the Court: Thomas K. Kahn, Clerk
By: Jackson, Jarvis

ISSUED AS MANDATE

AUG 3 0 2005

U.S. COURT OF APPEALS
ATLANTA, GA.

**ORIGINAL**

U.S. v. JORDI 3022

UNITED STATES of America,
Plaintiff–Appellant,

v.

Stephen John JORDI, Defendant–
Appellee.

No. 04–14046.

United States Court of Appeals,
Eleventh Circuit.

Aug. 1, 2005.

**Background:** Defendant was convicted in the United States District Court for the Southern District of Florida, No. 03-60259-CR-JIC, James I. Cohn, J., of attempted arson. Government appealed denial of upward departure sentence.

**Holding:** The Court of Appeals, Coogler, District Judge, sitting by designation, held that defendant was eligible for upward departure under application note for terrorism guideline, regardless of whether his conduct transcended national boundaries. Vacated and remanded.

**1. Criminal Law ⇐1139, 1158(1)**

District court's interpretation of sentencing guidelines is subject to de novo review on appeal, while its factual findings must be accepted unless clearly erroneous.

**2. Sentencing and Punishment ⇐651**

Sentencing court is required to calculate Guidelines sentencing range, though it may impose more severe or more lenient sentence if such sentence is reasonable. U.S.S.G. § 1B1.1 et seq., 18 U.S.C.A.

* Honorable L. Scott Coogler, United States District Judge for the Northern District of Alabama,

**3. Sentencing and Punishment ⇐800**

Application of sentencing guidelines is not complete until departures, if any, that are warranted are appropriately considered. U.S.S.G. § 1B1.1(i), 18 U.S.C.A.

**4. Sentencing and Punishment ⇐819**

Attempted arson defendant, convicted for plotting to blow up abortion clinics, was eligible for upward departure under application note for terrorism guideline, regardless of whether his conduct transcended national boundaries; offense was specifically enumerated in terrorism statute, and he had sought through his actions to intimidate or coerce civilian population. 18 U.S.C.A. § 2332b(g)(5)(B); U.S.S.G. § 3A1.4, comment. (n. 4), 18 U.S.C.A.

**5. Sentencing and Punishment ⇐665**

Commentary in Sentencing Guidelines Manual that interprets or explains guideline is authoritative unless it violates Constitution or federal statute, or is inconsistent with, or plainly erroneous reading of, that guideline. U.S.S.G. § 1B1.1 et seq., 18 U.S.C.A.

**6. Sentencing and Punishment ⇐661**

Language of Sentencing Guidelines is to be given its plain and ordinary meaning. U.S.S.G. § 1B1.1 et seq., 18 U.S.C.A.

———

Appeal from the United States District Court for the Southern District of Florida.

Before DUBINA and WILSON, Circuit Judges, and COOGLER*, District Judge.

sitting by designation.

Synopsis, Headnotes and Key Number Classification
COPYRIGHT © 2005 by West, a Thomson business

The Synopsis, Headnotes and Key Number Classification constitute no part of the opinion of the court.

3023                              U.S. v. JORDI

COOGLER, District Judge:

### I. Introduction.

The government appeals the district court's denial of its request for an upward departure pursuant to Application Note 4 of U.S.S.G. § 3A1.4. The district court denied the request, concluding that the government had failed to demonstrate that the defendant's crime transcended national boundaries and that such was required before it could consider the requested departure. This Court has not previously addressed this issue; however, an upward departure pursuant to the cited application note does not require a showing that the conduct transcended national boundaries. We vacate Jordi's sentence and remand this case for re-sentencing.

### II. Background.

On November 25, 2003, a federal grand jury in the Southern District of Florida indicted Stephen John Jordi for attempted arson in violation of 18 U.S.C. § 844(i) (Count One); distributing information pertaining to the manufacture of an explosive device in violation of 18 U.S.C. §§ 842(p)(2)(A) and 844(a)(2) (Count Two); and for possessing an unregistered silencer in violation of 26 U.S.C. §§ 5861(d) and 5871 (Count Three). The government and Jordi entered into a written plea agreement. Pursuant to the plea agreement, the government agreed to the dismissal of Counts Two and Three and Jordi agreed to plead guilty to attempted arson, Count One of the indictment.

As a part of the change of plea hearing, the government stated the factual basis for the charge against Jordi. According to the government, sometime in August 2003, Stephen Jordi concocted a plan whereby he would destroy abortion clinics using explosive devices. During tape recorded meetings with a confidential source, Jordi explained that his actions would be justified to prevent the deaths of unborn children. At one of those meetings, Jordi said, "I do not have the means to kill abortion doctors, but I do have the means to bomb clinics. Maybe that way I can dissuade other doctors from performing abortions." Jordi explained to the confidential source that he had been learning how to live off the land so that he could sustain himself when he was on the run after the bombings had started.

Between August and November of 2003, Jordi met numerous times with the confidential source to discuss plans for bombing abortion clinics. On a couple of occasions, they surveilled South Florida abortion clinics. Jordi later indicated to the confidential source that he would not bomb any clinics in South Florida but would go north to begin his bombing spree.

Jordi bought gas cans, gasoline, starter fluid, and flares in preparation for the proposed bombings. He also purchased a handgun and silencer from the confidential source. Shortly thereafter, Jordi arranged to have his family moved to Pensacola, Florida. This was a prerequisite to beginning the bombing spree according to Jordi's earlier conversations with the confidential source. Jordi, after being placed under oath, agreed with the facts as recited by the government.

The presentence investigation report listed a total offense level of 20 and a criminal history category of I resulting in an initial guideline imprisonment range of 33 to 41 months. However, 18 U.S.C. § 844(i) mandates a minimum term of sixty months imprisonment, thus changing the guideline imprisonment range to sixty months.

The government filed a motion for an upward departure pursuant to U.S.S.G. § 3A1.4, Application Note 4, arguing Jordi's crime involved planned terrorist acts intending to intimidate or coerce a civilian popula-

tion. The district court stated "that a higher sentencing range would more appropriately address the seriousness of the defendant's conduct," but found that it could not depart upwardly because "terrorism as referred to in section 3A1.4(a) of the Guidelines Manual requires a showing that the defendant's crime transcended national boundaries." Accordingly, the motion for an upward departure was denied and Jordi was sentenced to a 60 month imprisonment

### III. Standard of Review.

[1] "The district court's interpretation of the sentencing guidelines is subject to de novo review on appeal, while its factual findings must be accepted unless clearly erroneous." *United States v. Pompey*, 17 F.3d 351, 353 (11th Cir.1994) (*citing United States v. Dukovich*, 11 F.3d 140, 141 (11th Cir.1994)); *United States v. Moore*, 6 F.3d 715, 718 (11th Cir.1993); *United States v. Pinion*, 4 F.3d 941, 943 (11th Cir.1993); *United States v. Pedersen*, 3 F.3d 1468, 1470 n. 4 (11th Cir. 1993). Since the district court's denial of the upward departure was based upon an interpretation of the law rather than a factual finding, we review it de novo.

### IV. Discussion.

[2] Before considering the issue presented by this appeal, it should be noted that compliance with the provisions of the sentencing guidelines is not optional. As we have previously stated, "[a] sentencing court under *Booker* still must consider the Guidelines, and, such consideration necessarily requires the sentencing court to calculate the Guidelines sentencing range in the same manner as before *Booker*." *United States v. Crawford*, 407 F.3d 1174, 1178–1179 (11th Cir.2005) (*citing United States v. Shelton*, 400 F.3d 1325, 1332 n. 9 (11th Cir.2005)). "After it has made this calculation, the dis-

trict court may impose a more severe or more lenient sentence as long as the sentence is reasonable, but the requirement of consultation itself is inescapable." *Crawford*, 407 F.3d at 1179 (citations omitted.)

[3] The Guidelines Manual provides instruction on how its provisions are to be applied. The last step in the application instructions of the guidelines states: "Refer to Parts H and K of Chapter Five, Specific Offender Characteristics and Departures, and to any other policy statements or commentary in the guidelines that might warrant consideration in imposing sentence." U.S.S.G. § 1B1.1(i). Therefore, the application of the guidelines is not complete until the departures, if any, that are warranted are appropriately considered. The issue on appeal is whether the district court correctly applied the law in determining the applicability of the requested departure. If the district court failed in this endeavor, it by necessity failed to properly consider the guidelines.

[4] In its motion for an upward departure, the government pointed to the conduct of the defendant as appropriate for an upward departure citing the district court to Application Note 4 of U.S.S.G. § 3A1.4. That note provides:

By the terms of the directive to the Commission in section 730 of the Antiterrorism and Effective Death Penalty Act of 1996, the adjustment provided by this guideline applies only to federal crimes of terrorism. However, there may be cases in which ... the offense involved, or was intended to promote, one of the offenses specifically enumerated in 18 U.S.C. 2332b(g)(5)(B), but the terrorist motive was to intimidate or coerce a civilian population, rather than to influence or affect the conduct of gov-

ernment by intimidation or coercion, or to retaliate against government conduct. In such cases an upward departure would be warranted, except that the sentence resulting from such a departure may not exceed the top of the guideline range that would have resulted if the adjustment under this guideline had been applied.

U.S.S.G. § 3A1.4(a), cmt. n.4.

However, the district court agreed with Jordi's argument, that the court could not depart pursuant to this application note because Jordi's conduct had not been shown to have "transcended national boundaries." Jordi maintained at sentencing as he does on appeal, that § 3A1.4 only applies to "federal crimes of terrorism" and that the definition of a "federal crime of terrorism," as incorpo-

rated from 18 U.S.C. § 2332b,[1] includes the requirement that the defendant's conduct has "transcended national boundaries."[2]

This Court need not decide whether an adjustment under 3A1.4 requires a showing that the defendant's conduct "transcended national boundaries" to resolve this appeal. Section 3A1.4(a) provides for an upward adjustment (not departure) "[i]f the offense is a felony that involved, or was intended to promote, a federal crime of terrorism ...." U.S.S.G. § 3A1.4(a). The government did not request an upward adjustment pursuant to that section but instead sought an upward departure pursuant to Application Note 4 of U.S.S.G. § 3A1.4. The government's position in seeking an upward departure, rather

---

1. The relevant portions of this section are as follows:

    (a) Prohibited acts.—
    (1) Offenses.—Whoever, involving conduct transcending national boundaries and in a circumstance described in subsection (b)—
    (A) kills, kidnaps, maims, commits an assault resulting in serious bodily injury, or assaults with a dangerous weapon any person within the United States; or
    (B) creates a substantial risk of serious bodily injury to any other person by destroying or damaging any structure, conveyance, or other real or personal property within the United States or by attempting or conspiring to destroy or damage any structure, conveyance, or other real or personal property within the United States; in violation of the laws of any State, or the United States, shall be punished as prescribed in subsection c.

    ...

    (g) Definitions.—As used in this section—
    (1) the term "conduct transcending national boundaries" means conduct occurring outside of the United States in addition to the conduct occurring in the United States; ...
    (5) the term "Federal crime of terrorism" means an offense that—
    (A) is calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct; and

    (B) is a violation of—844(i) (relating to arson and bombing of property used in interstate commerce),....
18 U.S.C.A. § 2332b.

2. Congress, through the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104–132, 110 Stat. 1303, instructed the Sentencing Commission to amend U.S.S.G. § 3A1.4 so that the "adjustment relating to international terrorism only applies to Federal crimes of terrorism as defined in Section 2332b(g) of Title 18, United States Code." The Sentencing Commission did as instructed, adding the first application note to section 3A1.4 defining a "federal crime of terrorism" as having the same "meaning given that term in 18 U.S.C. § 2332b(g)(5)." U.S.S.G. § 3A1.4(a) cmt. n.1. But Jordi contends that Congress's incorporation of the 18 U.S.C. § 2332b definition of "federal crimes of terrorism" by implication incorporated into that definition all the elements of the offense criminalized by that statute even though not contained in the definition itself. While this Court has arguably answered that question, Jordi insists that its conclusive effect should be limited because the court was not then confronted with the argument that the definition should include an international component. See United States v. Mandhai, 375 F.3d 1243, 1247 (11th Cir.2004).

than a § 3A1.4(a) adjustment, by necessity is dependant upon the defendant's conduct not fitting within the provisions of § 3A1.4.

Unlike § 3A1.4, Application Note 4 to that section does not require an interpretation of the term "federal crime of terrorism" at all. Instead, by its own terms, it applies to situations where "the offense involved, or was intended to promote, *one of the offenses specifically enumerated in 18 U.S.C. § 2332b(g)(5)(B)*, but the terrorist motive was to intimidate or coerce a civilian population, rather than to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct." U.S.S.G. § 3A1.4(a) cmt. n.4 (emphasis added).

**[5, 6]** "[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson v. United States*, 508 U.S. 36, 38, 113 S.Ct. 1913, 1915, 123 L.Ed.2d 598 (1993). The language of this application note is clear and unambiguous. "In accordance with well-established rules, the language of the Sentencing Guidelines is to be given its plain and ordinary meaning." *United States v. Tham*, 118 F.3d 1501, 1506 (11th Cir.1997) (citations omitted).

In addition, the utilization of Application Note 4 in this case is consistent with the reason given by the Sentencing Commission for the note: "[T]he amendment adds an encouraged, structured upward departure in § 3A1.4 (Terrorism) for offenses that involve terrorism but do not otherwise qualify as offenses that involved or were intended to promote 'federal crimes of terrorism' for purposes of the terrorism adjustment in § 3A1.4." United States Sentencing Guidelines Manual, Supplement to Appendix C, Amendment 637 (effective November 1, 2002).

To qualify for the upward departure delineated in Application Note 4, the defendant must (1) be guilty of an offense that "involved, or was intended to promote, one of the offenses specifically enumerated in 18 U.S.C. 2332b(g)(5)(B)," and (2) have the motive "to intimidate or coerce a civilian population." *See* U.S.S.G. § 3A1.4(a) cmt. n.4. Jordi's conduct involved an offense that was "specifically enumerated in 18 U.S.C. 2332b(g)(5)(B)" and the district court found "that the defendant sought through his actions to intimidate or coerce a civilian population by fire bombing ...." Therefore, the district court was authorized to depart pursuant to the application note.

### V. Conclusion.

The district court determined the guideline range and then improperly determined that it could not grant an upward departure. As a result, the guidelines were improperly applied and thus were not appropriately consulted.

VACATED AND REMANDED.

A True Copy - Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit

By: _____
Deputy Clerk
Atlanta, Georgia

U.S. Court of Appeals, Eleventh Circuit—West, a Thomson business, Saint Paul, Minn.